## FRANK TAYLOR v. THE STATE.

1. THEFT OF THE TAKER'S OWN PROPERTY. — At common-law the taking of one's own goods could not be larceny, unless they were taken from a bailee and the taking operated to charge the bailee with their value. Under the Code of this State, however, it seems immaterial whether or not the bailee would be so affected by the taking.

2. SAME — EVIDENCE. — In a trial for theft of his own property, the defendant should be allowed to prove any and every fact which may legitimately tend to show his *animus* in the taking, and serve to disprove a fraudulent intent therein, — as, for instance, the discharge of a debt for which he had pledged the property as security.

3. SAME. — Declarations of the defendant made at the time of the taking of the property, and explanatory of his motive for taking it, were *res gestæ,* and are evidence in his behalf.

APPEAL from the District Court of Erath. Tried below before W. KENNEDY, Esq., Special Judge.

The indictment charged the theft of a gelding, the property of W. B. Hurley. By the testimony of Hurley and others it appears that Taylor, the appellant, was in custody for a fine and costs, amounting to about $11, and that at his request Hurley paid the sum, and received the gelding as a pledge for its repayment in two or three weeks. Hurley testified that the horse was to become his property if the defendant failed to pay within the time limited, and that he did so fail, whereby the witness thereafter considered himself the absolute owner of the animal. It appears further from his testimony, however, that after the lapse of two or three months Hurley played "poker" with the defendant, the stakes being the defendant's debt to him on the one hand and defendant's interest in the horse on the other. Hurley won, and, according to his testimony, the defendant never afterwards asserted any claim upon the horse, but proposed to put up a certain amount of stone fence for Hurley as a price for the animal; but that this offer was declined. Within a few weeks after the pledge, the defendant went to live at Hurley's, on an agreement, according to the latter, that he should do what little jobs his ill-health would permit, without other compensation than his board, etc. He remained there some six months, occasionally doing light work, such as pulling fodder, hauling wood, and herding horses. The horse in the meantime was allowed to run on the range, and disappeared therefrom contemporaneously with the departure of the defendant. Hurley went in pursuit, and came up with the defendant and the horse at Fort Worth. On the part of the defence there was evidence that during several weeks after the pledge the defendant occasionally had the horse in his actual possession, and exercised several acts of ownership over him by loaning him on one or two occasions, etc. The defence offered to prove declarations made by the defendant when he took the horse. On objection by the prosecution these declarations were excluded, and the defence took a bill

of exceptions, but failed to set out in it the declarations they would have proved if allowed.

The jury found the defendant guilty, and assessed his punishment at five years in the penitentiary.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J. Although the indictment was in the usual form, and charged the theft of a gelding from the designated owner, and there was evidence introduced upon the trial which might tend to establish both legal title and possession in the alleged owner, yet the court below evidently considered the prosecution as coming within the provisions of our statute relating to theft of one's own property (Pasc. Dig., art. 2388), and confined his instructions to the jury exclusively to that phase of the evidence. In view of the not altogether satisfactory character of the testimony as to ownership, this may have been the better course; and we cannot perceive that it was prejudicial to the defendant, or was calculated to injure him in any manner whatsoever.

At common law, the taking of one's own goods cannot be larceny unless they were in the hands of a bailee, and the taking had the effect of charging the bailee with their value. 2 Russ. on Cr. 10; 1 Hale's P. C. 513; *Palmer* v. *The People*, 10 Wend. 165; *The People* v. *Stone*, 16 Cal. 369.; *The People* v. *Thompson*, 34 Cal. 671; *Spivey* v. *The State*, 26 Ala. 90. Whether or not the common-law qualification obtains with us is hardly necessary in this case to be determined; but from the language of our statute it would seem to have been the legislative intention to abolish such qualification, and to make the taking of one's own property theft, when such property had been deposited with the person in possession as a pledge or security for a

debt, without regard to its ultimate probable effect upon such bailee or mortgagee.

All authorities, however, concur in holding that in prosecutions of this character it is the right of the defendant to introduce and the duty of the court to admit in evidence every possible fact which can legitimately tend to illustrate the *animus* of the defendant in taking his property, and which may serve to disprove any fraudulent motive for his conduct. Roscoe's Cr. Ev. 22; *Spivey* v. *The State*, 26 Ala. 103; *The People* v. *Stone*, 16 Cal. 369. In the case last cited, which in most of its features is very similar to the case at bar, Judge Baldwin, in delivering the opinion of the court, said: "The crime of larceny is compounded of the taking and carrying away of property, *and* the felonious intent. Whatever has a legal tendency to show the intent is proper evidence. The facts sought to be introduced, whatever weight they were entitled to, tended to explain the transaction. If, for example, the defendant showed that this debt had been discharged, and that by the contract this discharge revested the property in him, the taking of the property from the possession of Barrett would be presented in a different light from that of a taking when he had no right or claim to it. It is not every trespass that is a larceny. The felony is in the intent to appropriate another's property, the taker knowing that he had no right or claim to it; and although this intent may sometimes be presumed from circumstances, yet in cases like the present the law permits all the facts connected with the title and the taking to come before the jury, that they may judge of the intent."

In so far as the evidence upon the trial is disclosed by the statement of facts, there is an almost entire absence of evidence in behalf of defendant which might tend to explain his motive in the taking, or the particular theory as to his right to the property upon which his action was based. It may be assumed that his defence was rested in

a great measure upon the assumption that his services as an employee of the person to whom the horse had been pledged was more than sufficient to liquidate the paltry indebtedness assumed and paid originally by that person, and which constituted the basis of the pledge. Be that as it may, as appears by a bill of exceptions saved at the time, the defendant offered to prove by two persons who were present at the time he took possession of the gelding, certain declarations made by him, the exact nature and purport of which are not shown, the bill as drafted being essentially defective in this particular. In view of the whole evidence, and the peculiar features of the case, we feel constrained to assume that these declarations must have related to his claim of ownership of the animal, and necessarily tended to illustrate his motive in the taking; and if so, they should have been admitted as concomitant with the main act, and necessarily a part thereof. They were rejected, and this we deem error.

In the unexceptional charge of the court, the jury were directed to acquit in case they found from the evidence that the defendant took the gelding in the honest belief that the debt for which it had been pledged was paid in either of the modes before referred to in the charge, and as these declarations at the time of the taking were about the only, and certainly the most significant, evidence by which that honest belief could be shown to the jury, it was peculiarly important to the defendant, and essential to a right understanding of the case, that they should have been elicited, as well as all other facts which might have a tendency to explain away the apparent criminality of the act.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*